JOHN PATRICK WARD, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ward v. Commissioner
Docket No. 17526-83.
United States Tax Court
T.C. Memo 1985-483; 1985 Tax Ct. Memo LEXIS 146; 50 T.C.M. (CCH) 1062; T.C.M. (RIA) 85483; September 17, 1985. John Patrick Ward, pro se. Kenneth A. Burns, for the respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows: Addition to Tax
Year
Deficiency
Sec. 6653(a) [1]
1979
$5,691.51
$284.58
1980
3,282.68
164.13
*147 The issues for our decision are (1) whether petitioner understated his tip income earned as a craps dealer during 1979 and 1980; and (2) whether petitioner is liable for the addition to tax under section 6653(a) for negligence. FINDINGS OF FACT Some of the facts were stipulated and are found accordingly. Petitioner was a resident of Las Vegas, Nevada, at the time he filed the petition herein. He filed Federal income tax returns for the taxable years at issue. During the years involved, petitioner worked as a craps dealer at MGM Grand Hotel and Casino (MGM) in Reno, Nevada. Petitioner worked the graveyard shift with hours from 2:00 a.m. to 10:00 a.m. During the weekdays at MGM on the graveyard shift there was one craps table open with a crew of four men. On weekends, two tables were open. Each crew operated on a rotation system with three men working and one on break. In addition to a regular salary which was about minimum wage, the dealers received "tokes" or tip income from players at the casino. A player could give a dealer a tip directly, or place a separate bet for a dealer in addition to the player's own bet. Petitioner reported salary and tip income during the *148 taxable years at issue as follows: Year
Salary
Tip Income
Hours Worked
1979
$8,261.83
$2,019.00
1,773
1980
7,453.00
900.00
1,153
Respondent computed petitioner's tip income as follows: Year
Tip Income
1979
$18,335.04
1980
12,540.18
Respondent based his computations upon the results of a tip compliance program (the "program") begun by respondent in 1981. Dealers in Nevada casinos could participate in the program by agreeing to fully report all of their tips received to the Internal Revenue Service. In return for this information from the dealers, respondent agreed to forego audits of any of the dealers' unopened tax years. At MGM, many blackjack dealers participated in the program but participation by craps dealers was poor. In contrast to craps dealers, who pooled their tips equally by table, blackjack dealers pooled their tips equally by shift, making it easier for respondent to monitor compliance and thus encouraging participation in the program. All craps dealers who refused to participate in the program were audited by respondent for the taxable years 1979 and 1980. Since few craps dealers at MGM participated in the *149 program respondent computed a tip rate for the craps dealers by using the tip rate reported by blackjack dealers on the graveyard shift at MGM who participated in the program from October 1981 through May 1982. The tip rate reported by blackjack dealers on the graveyard shift at MGM was $11.48 per hour. Respondent then multiplied the tip rate of $11.48 by the number of hours worked by petitioner to reach a total tip income figure for each year. Petitioner and one of his fellow co-workers, Timothy Uhlmer (Uhlmer), testified that business was very bad at MGM during 1979 and 1980. Uhlmer also worked as a craps dealer on the graveyard shift at MGM. Uhlmer testified that often on weekends when business was slow, one crew would be sent home. On cross-examination, Uhlmer admitted that he too had received a notice of deficiency for understating his tip income and that he had a case pending in this Court. Petitioner maintained no records from which his tip income could be determined. The amount he reported on his tax returns he said was based upon a "mental computation." Upon filing his petition in this case, petitioner asserted numerous constitutional arguments as to why he was *150 not required to pay income taxes. Fortunately, petitioner has forsaken those arguments and is now attempting to refute respondent's determinations. Petitioner contends that respondent's method of computing his tip income is erroneous. Petitioner argues that respondent's use of a tip rate that was based upon the tips earned by blackjack dealers in 1981 and 1982 results in inflated figures for craps dealers in 1979 and 1980. The figures are inflated, petitioner argues, because blackjack is an easier, more popular game than craps, resulting in more players and thus more tips for its dealers, and also that in 1979 there was a gas shortage which hurt MGM's business that year. For these reasons, petitioner concludes that the information used to recompute petitioner's tip income is irrevelant and should be rejected. Respondent contends that since petitioner kept no record of his tip income, respondent is authorized by section 446 to compute income by a method which, in his opinion, does clearly reflect income. Respondent argues that the tip rate reported by blackjack dealers is the most reasonable rate to use to compute tip income for craps dealers. Respondent argues that based upon *151 this Court's decision in , affd. without published opinion and , revd on other grounds, , data accumulated in one year can be utilized to determine income in another year when no other evidence is available. In addition, respondent noted that the tip rate of blackjack dealers was used because the craps dealers refused to participate in the program which prevented respondent from obtaining better evidence with respect to craps dealers. Respondent rejected testimony offered by petitioner's co-worker, Uhlmer, arguing that Uhlmer has a vested interest in the trial due to his pending case in this Court. OPINION It is well established that "tokes" or tip income must be included in gross income under section 61. , affd. without published opinion ; . The issue in this case is whether petitioner understated his tip *152 income by the amounts determined by respondent. Petitioner bears the burden of overcoming respondent's determination. ; Rule 142(a). Since petitioner failed to maintain records from which his tip income could be accurately determined, respondent was entitled to reconstruct petitioner's tip income using a method which, in his opinion, would clearly reflect that income. . Respondent has great latitude in adopting a method for reconstructing a taxpayer's income. . It is sufficient if the reconstruction is reasonable in light of the surrounding facts and circumstances. . However, an adjustment can be made to respondent's determination if it is found that the method of computing petitioner's tip income proves inadequate. . In this case, petitioner was a craps dealer at MGM during the years at issue, 1979 and 1980. Respondent used data accumulated from tips reported by blackjack *153 dealers at MGM in 1981 and 1982 to compute petitioner's tip income. [2] Petitioner argues that this data cannot be used to compute his tip income, for several reasons. At MGM each shift of craps dealers pooled their tips equally by table. In contrast, all tips received by blackjack dealers on a particular shift were pooled and split equally amongst the dealers on that shift. As petitioner testified craps is a more difficult and thus less popular game than blackjack, resulting in fewer players, as evidenced by the need for only one craps table during the week at the MGM on the graveyard shift, and two on the weekends. This is in contrast to blackjack which is a more popular game with more players and more tables open. In addition, petitioner argued that the gas shortage resulted in lower patronage to MGM in 1978-1979 than in 1980-1981. Respondent contends that he was forced to use the data accumulated from blackjack dealers to project petitioner's income as a craps dealer because petitioner refused to cooperate in the program. Respondent also notes that *154 this Court has upheld the use of data accumulated in one year to project income in another year if no other evidence is available, citing , affd. without published opinion and , revd on other grounds, . In Catalano, respondent conducted a surveillance project at Caesar's Palace in 1976 to determine the tip rate of its dealers for the taxable years 1976-1979. All tips were placed in "toke boxes" and given to the cashier at the end of a shift. Tips were divided equally amongst the dealers. Respondent's agents stationed themselves at the cashier's cage and estimated the dealers' tip income based upon the chips cashed in. We upheld respondent's method of reconstructing income as "thorough and professional" and having a "direct bearing" on the dealers' income. . In Conforte, respondent reconstructed the income of a legal house of prostitution for the taxable years 1973-1976. Respondent based his computations upon *155 a paper found in the taxpayer's trash which detailed the actual income earned by the taxpayer during a 24 hour period. Respondent's computation was upheld since it was based upon the only information available to him, the paper found in the taxpayer's trash, as all other evidence had been burned by the taxpayer. . In both of the above mentioned cases, respondent utilized information gathered about particular taxpayers to project those taxpayers' incomes in the taxable year at issue. In contrast, in the instant case respondent is attempting to use data collected from taxpayers other than petitioner who were engaged in a different type activity to project petitioner's tip income. However, we have noted previously, respondent has broad authority to reconstruct a taxpayer's income. See, e.g., , modified , affd. per curiam . Respondent's determination is also presumed to be correct. But, based upon the factors mentioned above, i.e., *156 that petitioner dealt craps not blackjack; that craps dealers pooled tips equally by table not by shift; that craps was less popular than blackjack; that only one craps table was open at a time in contrast to 20 blackjack tables; and that patronage of the MGM casino was higher in 1980-1981 than in 1978-1979, we are persuaded that an adjustment should be made in respondent's determination. [3] However, we are mindful of the fact that respondent was unable to obtain information directly from petitioner because of petitioner's refusal to comply with the program. In addition, petitioner did not offer any evidence as to a more reliable means of estimating his tip income. We make our adjustment with these factors in mind. We find that respondent's determination of additional tip income for petitioner in 1979 and 1980 of $18,335.04 and $12,540.18, respectively, is reduced to $14,668 and $10,032 respectively, resulting in total tip income for 1979 of $16,687 and for 1980 of $10,932. *157 Respondent also determined that petitioner is liable for additions to tax under section 6653(a) for 1979 and 1980. Section 6653(a) provides for an addition to tax where any part of the underpayment is due to negligence or intentional disregard of rules and regulations. The burden is upon the taxpayer to show that the addition is improperly imposed. . Section 6001 and the regulations thereunder clearly require petitioner to maintain adequate records. The record reveals that petitioner herein failed to keep adequate records with respect to his tip income. Therefore, we must sustain respondent's determination under section 6653(a). To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect during the taxable years at issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The record is unclear but apparently no tip information for dealers at MGM was available for the years 1979 and 1980.↩
3. We note that we are not persuaded to make an adjustment based upon the testimony of petitioner's witness, Uhlmer, for we agree with respondent that the testimony was self-serving and therefore unreliable.↩